Argued May 22; affirmed June 17; argued on rehearing September
17; former opinion adhered to October 21, 1941

## KIDDLE *v.* SCHNITZER ET AL.

(114 P. (2d) 109, 117 P. (2d) 983)

318

Before Kelly, Chief Justice, and Bailey, Lusk, Rand and Rossman, Associate Justices.

*Chester E. McCarty*, of Portland (Glen McCarty, of Portland, on the brief), for appellant.

*Donald K. Grant*, of Portland (Maguire, Shields & Morrison and Randall B. Kester, all of Portland, on the brief), for respondents.

BAILEY, J.   The plaintiff, Clyde L. Kiddle, instituted this action against S. Schnitzer and others to recover damages for personal injuries suffered by him as the result of a collision between an automobile operated by the plaintiff and a truck and trailer operated by and on behalf of the defendants. From a judgment entered on a verdict in favor of the defendants the plaintiff appeals.

The accident occurred on November 6, 1938, about five-thirty o'clock in the evening, approximately six miles west of Pendleton on a part of U. S. highway No. 30 commonly referred to as the Pendleton cut-off. This part of the highway has an oiled surface twenty feet wide, with graded shoulders on each side three to four feet wide. The truck and trailer and the car operated by the plaintiff were proceeding in a westerly direction. The collision took place on straight road over a "nearly level" stretch of land with possibly "a little incline or grade," as the plaintiff described it, approximately six hundred feet westerly from the crest of a hill over which the highway passes.

The trailer was loaded with steel rails and pipes, which extended some five or six feet beyond the end of the trailer. There was evidence that there were two clearance lights and a tail-light on the truck and a rear reflector on the trailer. The accident happened

about one hour after sunset, in clear weather with visibility good and the pavement dry. The plaintiff was driving at what he termed his usual rate of about forty-five miles an hour. The truck was slowing down to five or ten miles per hour, preparatory to stopping in response to a signal from a state police officer.

The plaintiff's car crashed into the rear end of the trailer. Both vehicles were on the right side of the highway and there was no other vehicle or obstruction on the left side. The tires of the plaintiff's car made deep skid marks on the pavement for a distance of eighty feet up to the point of impact. The marks were parallel with the yellow middle line of the highway. The front end of the car was completely wrecked and the plaintiff suffered serious bodily injuries.

The complaint alleges that the defendants were negligent in failing to have the statutory lighting equipment on the rear of the truck and trailer and on the end of the overhanging load. The answer charges the plaintiff with contributory negligence in five particulars, namely: 1. Excessive speed, more than sixty miles per hour. 2. Failing to have his automobile under control. 3. Failing to keep a proper lookout. 4. Failing to slow down and stop his automobile or swerve the same to the left to avoid striking the truck. 5. Driving his automobile while equipped with defective and insufficient lights.

One of the assignments of error here urged is the failure of the court to withdraw from the consideration of the jury the specification of contributory negligence in regard to defective and insufficient lights on the plaintiff's car. The plaintiff asserts that there is no evidence in the record to support this allegation of contributory negligence.

In describing the accident, the plaintiff testified on direct examination as follows:

"Q. Now, will you relate to the jury just what happened after you came up over the hill? A. I came up over the hill and traveled for a short distance. This truck loomed up ahead of me and I applied my brakes."

He further stated that both the front lights of his car were burning "bright" and that he did not observe any lights or reflectors on the truck or trailer. On cross-examination the plaintiff thus testified:

"Q. What were you doing as you came up over the crest of the hill? Was there anything to divert your attention? A. No, sir.

"Q. About how far were you away from the truck when you saw it, Mr. Kiddle? A. I couldn't estimate it. It loomed up ahead of me and I slammed the brakes on.

"Q. Slammed on your brakes, you think, immediately; is that right? You slammed on your brakes when you saw it? A. Yes, sir, as quick as I saw the truck.

"Q. Just as quick as you saw the truck? And then you say you lost consciousness? A. With the impact, when I hit the truck. Q. When you hit the truck. But from the time that you observed it, first observed it, you noticed the overhang of this load? A. Yes, sir. Q. All of those matters? A. Yes, sir, just before I hit the truck I noticed that.

"Q. Do you have any idea what the distance ahead is of your lights, your lights' ability to illuminate the road; that is, how far ahead the headlights of your car throw their beams? A. No, I haven't. A Chevrolet car and I suppose it was about like any other Chevrolet car. I know the lights were good and hadn't caused any trouble.

"Q. Did you make any attempt to turn out at all, Mr. Kiddle? A. I didn't have time."

The plaintiff, at the time of the accident, was required to have head-lamps of his motor vehicle so "constructed, arranged, and adjusted that" they would at all times, under normal atmospheric conditions and on a level road, "produce a driving light sufficient to render clearly discernible a person two hundred" feet ahead: § 55-2603, Oregon Code 1935 Supplement. In this connection, the plaintiff testified that the truck "loomed up" ahead of him and that "as quick as" he saw it he "slammed on" his brakes. He did not have time after seeing the truck to swerve his car, to avoid striking it. There was nothing, he testified, that diverted his attention from the highway in front of his car. There was no direct evidence as to the distance ahead of the plaintiff's car that the headlights thereof would make a man clearly discernible to the driver of the car. The plaintiff stated that he had no such knowledge. He testified also that he could not estimate how far the truck was away from him when he first saw it. The record shows the distance he traveled after he applied his brakes, and the condition of his car gives evidence of the force of the impact.

With the plaintiff's car maintaining a speed of forty-five miles an hour and the truck proceeding at only five miles an hour at the time of the collision, the plaintiff's car must have traveled in excess of two hundred twenty-five feet after first coming within two hundred feet of the truck and before overtaking it. However, the speed of both vehicles was being decreased, that of the car probably more rapidly than that of the truck, which is mentioned as five to ten miles an hour at the time of the collision; and the distance that the plaintiff's car would travel before over-

taking the truck was accordingly greater than two hundred twenty-five feet.

■ The question raised by the plaintiff's assignment of error hereinabove mentioned is whether the jury could, from all the facts before it, draw the inference that the plaintiff's car was "equipped with defective and insufficient lights". Whether the plaintiff was guilty of contributory negligence was a question for the determination of the jury. In arriving at its conclusion, the jury might have been of the opinion that the plaintiff was driving not in excess of forty-five miles an hour, as testified to by him; that his attention had not been diverted from the highway; that he was keeping a lookout; and yet that his failure to see the truck and trailer in time to avoid striking the latter was due, in part at least, to his own negligence.

■ The plaintiff testified that he did not see the truck in time to avoid a collision. Whether his failure or inability to stop was due to excessive speed of his car, inattention on his part, poor visibility, a combination of those factors, or some other cause, was a question for the jury. The visibility possible to a driver at night is largely dependent upon the sufficiency of the headlights on his car to make discernible objects on the roadway.

There is no direct evidence that the plaintiff actually did see or could have seen the truck at a distance of two hundred feet. From the facts proved, the jurors might well have reasoned, out of common knowledge and their own experience, that defective or insufficient headlights on his car prevented the plaintiff from seeing the truck sooner than he did: §§ 2-402 and 2-404 O. C. L. A. In order to reach this conclusion, it was not necessary to base inference on inference. No

error was committed by the trial court in refusing to withdraw from the jury the question of the condition or sufficiency of the headlights on the plaintiff's automobile.

In *Barry v. Tyler,* 171 Va. 381, 199 S. E. 496, the plaintiff's intestate was a guest in a car which struck the rear end of a parked truck. The driver of the car testified that he was traveling between thirty and thirty-five miles an hour, on the right side of the road, "and all of a sudden a big blur appeared", and that he turned to the left but could not avoid striking the truck. He further testified that he was looking ahead but saw no warning light. No evidence was introduced on behalf of the defendant. The court charged the jury that the law required motor vehicle lights to be capable of revealing a person or object two hundred feet ahead, and that if it found that the car was not so equipped or that the lights were not burning, and that such failure was the sole and proximate cause of the accident, it should return a verdict for the defendant. The jury found in favor of the defendant. With reference to that instruction the appellate court said:

"Tyler testifies that though he was looking, he did not see the truck. Thus the lack of visibility is offered as a fact. From that fact, natural inferences may be drawn. A reasonable inference is that the headlights of the Ford car did not come up to the requirements of the statute.

"Inferences drawn from physical facts may be as strong as direct evidence. Such inferences amount to circumstantial evidence. Facts may be proven by circumstantial evidence as well as by direct evidence. An instruction can be based on inferential or circumstantial evidence."

Error is assigned on the refusal of the circuit court to give a requested instruction with reference to an emergency, with which the plaintiff now contends he was confronted when he first saw the truck and trailer in front of his car.

██ It is a well-established rule that an automobile driver who, by the negligence of another and not by his own negligence, is suddenly confronted with an emergency and is compelled to act instantly to avoid injury or damage, is not guilty of negligence if he makes such a choice of action as might be made by a person of ordinary prudence, under like circumstances, even though his decision proves not to have been the wisest possible: 5 Am. Jur., Automobiles, § 171, page 600. When the emergency has arisen through the driver's own negligence, he can not rely upon it to excuse his consequent action: *Dickson v. King,* 151 Or. 512, 49 P. (2d) 367; *Hornby v. Wiper,* 155 Or. 203, 63 P. (2d) 204; 5 Am. Jur., *supra.*

In 5 Am. Jur., at page 601, it is said:

"The sudden emergency doctrine is not an exception to the general rule; the question is whether the defendant acted as an ordinarily prudent and careful person would have done under the same circumstances, and the emergency is one of the circumstances contemplated by the rule. If the defendant's course was one that an ordinarily prudent and careful driver put in such a position might have taken, he is relieved from liability; otherwise he is not."

The trial judge, after explaining the issues in the case, further instructed the jury as follows:

"Now, negligence has been defined and recognized as the doing of an act that an ordinarily prudent person would not have done, or the failure to do such an act that an ordinarily prudent person would have

done under the same or like circumstances. In other words, it is a measure of conduct and that measure is not the highest degree of care nor is it satisfied by the lowest degree of care. It is that care which the ordinary person would exercise under the same or similar circumstances."

The foregoing instruction covered, in a general way, the degree of care required under all circumstances, which would include an emergency. The instruction did not, however, specifically discuss emergency or particularize as to the degree of care to be expected in such case. As was said in *Nordlund v. Lewis & Clark Ry. Co.*, 141 Or. 83, 92, 15 P. (2d) 980:

"The judge who presides over the trial and sees the manner in which the issues develop, whether they are mentioned in the pleadings or not, is best able to know what instructions are needed by the jury to produce a verdict in harmony with the law, and thus much must be left to his direction."

In *Murphy v. Read*, 157 Or. 487, 72 P. (2d) 935, error was assigned on the refusal of the court to give a requested instruction on unavoidable accident. In holding that no error was committed in that respect, this court stated that such an instruction would have been merely a repetition of the general charge of negligence. There is considerable doubt in the case now before us whether there was an emergency not due to the plaintiff's own negligence. The judge who presided over the trial, in a written opinion denying the motion for a new trial, with reference to his refusal to give the plaintiff's requested instruction, observed:

"After a review of the record in this case, the entire transaction, it seems to the court, was one which does not make applicable the question of an emergency.

As a matter of fact, all these automobile accidents might be deemed emergencies. Very few are premeditated and these are cases of wilful and intentional wrong, so that the court does not feel that the question of emergency was to be emphasized in this particular transaction. The general rule of ordinary care was applied and the jury was instructed that the degree of care was commensurate with the dangers reasonably to be apprehended.''

■■ It is within the sound discretion of the trial judge whether to enlarge upon any particular subject covered by general instructions. There are instances in which refusal to give a specific instruction on the emergency rule would constitute reversible error. In the case before us, although it possibly would not have been erroneous to give an instruction on emergency, nevertheless the failure to give such an instruction, in the light of all the facts in the case, can not be said to be an abuse of discretion. To hold in this instance that the circuit court should have instructed the jury with particular reference to the emergency doctrine would establish a precedent requiring a similar instruction to be given, if requested, in practically every case involving a motor vehicle accident.

We have carefully examined the entire charge given by the court to the jury and have found nothing therein which overemphasizes contributory negligence.

No error appears in the record, and the judgment appealed from is accordingly affirmed.

---

RAND, J. (dissenting). I cannot concur in holding that no reversible error was committed in the trial of this cause in the court below. The whole evidence

shows, and it is undisputed, that the defendants were grossly negligent and, as I read the record, that was the sole cause of plaintiff's injuries.

The defendants, the owners and operators of the truck and trailer charged in their amended answer that the plaintiff was guilty of contributory negligence in that (1) he was driving his automobile at an excessive rate of speed and in excess of sixty miles per hour; (2) he failed to have his automobile under proper or any control; (3) he failed to keep a proper lookout; (4) he failed to stop his automobile or to swerve to the left to avoid striking defendant's truck; and (5) he was driving his automobile while equipped with defective and insufficient lights. These allegations of the answer were put in issue by the reply.

The only witness who testified as to the speed at which the plaintiff was driving when he first saw defendants' truck on the highway was the plaintiff himself. He testified in respect thereto as follows:

"Q. Mr. Kiddle, just prior to the time that you saw this truck on the highway there, prior to the time you put on your brakes, will you tell the jury what the speed of your automobile was, how fast you were driving. A. About forty-five miles per hour."

On cross-examination, he testified:

"Q. How do you know you were driving forty-five miles an hour? A. That is my usual rate. Q. Did you look at your speedometer? A. No, sir, but that is my usual rate of speed in traveling. I do a great deal of traveling. Q. With your brakes on solid, the brakes of that particular car on solid and skidding your wheels, about what distance do you think you can stop your car in at 45 miles an hour? A. I don't believe I have knowledge of that. Q. You don't know about that. And that is just the estimate that you

make because that is the usual speed that you were traveling? A. That is right."

Notwithstanding that this was the only testimony as to the rate of speed at which the plaintiff was traveling, the court instructed the jury:

"* * * If you find from the evidence in this case that at the time and place of this accident, the plaintiff was driving at a speed greater than was reasonable and prudent under the circumstances then and there existing, then he would be negligent, and if you find that such negligence contributed to the happening of the accident, then the plaintiff cannot recover damages in this case and your verdict should be for the. defendants."

In the absence of any evidence tending to show that plaintiff was traveling at a dangerous or excessive rate of speed, the giving of this instruction was reversible error.

It was also error for the court to permit the jury to speculate as to whether or not plaintiff's automobile was equipped with defective or insufficient lights, as charged in the answer. The only evidence in the record upon that question is the testimony offered by the plaintiff and by Mr. Frank Brittingham, a member of the state police force who was present at the time and who had stopped the loaded truck and trailer because of defective lights on the truck and trailer. Plaintiff testified:

"Q. How old was that automobile (plaintiff's automobile) at the time of the accident approximately? A. About three months and a half old. Q. And do you recall about how much mileage was on it, how far it had been driven? A. About seven thousand miles. * * * Q. Did you have your lights burning? A.

Yes, sir. Q. Were they burning bright? A. Bright. Q. And were they both burning? A. Yes, sir.''

On cross-examination, he testified:

''Q. Do you have any idea what the distance ahead is of your lights, your lights' ability to illuminate the road; that is, how far ahead the headlights of your car throw their beams? A. No, I haven't. A Chevrolet car and I suppose it was about like any other Chevrolet car. I know the lights were good and hadn't caused any trouble.''

Mr. Brittingham testified:

''Q. Did you hear the other car approaching, Officer? A. Yes, I heard the other car coming. Q. And what about the noise, could you tell the jury what you did hear? A. You could tell there was a car coming, traveling along, I couldn't see what rate of speed, because I wasn't behind the car checking it. I just stepped over to the edge of the road to let the car come on by. Q. Was it a loud noise? A. It was a new car. It didn't make a very loud noise.''

With no other testimony bearing upon this question, the court instructed the jury as follows:

''You are instructed that the law requires the plaintiff to have his automobile equipped with lights which would throw sufficient light ahead to make clearly visible all vehicles, persons, or substantial objects upon the roadway within a distance of two hundred feet. Likewise you are instructed that if you find from the plaintiff's testimony that he failed to have his car equipped with lights sufficient to make clearly visible the defendants' truck at a distance of two hundred feet, then the plaintiff would be negligent and could not recover.''

The giving of this instruction was error since there was no evidence whatever tending to show that the lights on plaintiff's automobile were defective or in-

sufficient. To permit jurors to speculate upon questions which are issues in the case but upon which no evidence is offered and no presumption applies is clearly error. The same is true in reference to the other three charges of contributory negligence—Nos. 2, 3 and 4.

This is not the case of a drunken joy-rider overtaking and jamming his automobile into the rear end of a loaded truck. The plaintiff was riding alone. He was 47 years of age and was in the employ of the federal department of agriculture, his official position being that of crop insurance supervisor for Oregon. His duties required him to travel over the state and he was engaged in the performance of those duties when he sustained the injuries complained of.

According to all the testimony, the accident happened at the hour of 5:36 o'clock on the evening of November 6, 1938, one minute less than a full hour after the sun had set on that day and every one admits that it was dark at the time. The place of the accident was on the highway six miles west of Pendleton and on what appears from the photographs offered to be a slight down grade, going west from Pendleton, the direction in which both the plaintiff's automobile and defendants' truck were traveling at the time of the accident. To reach that point, the parties had to ascend a long grade after leaving Pendleton and they had just passed the crest of the hill when the accident occurred. The driver of the truck, who was a witness for the defendants, testified that he had left Pendleton at 4 o'clock that afternoon, had not stopped on the way and had reached the place where the accident had occurred at 5:36 p. m., having averaged only four miles per hour after leaving Pendleton, which was a distance of

only six miles. The accident occurred on a straight-away with no dwellings or lights on either side and the road-bed was dry.

The defendants are junk dealers doing business in Portland under the name of Alaska Junk Company. According to the testimony of the driver of the truck, who was called as a witness for the defendants, the truck was a four-ton Dodge with a dual axle and Teco logging trailer, having four dual wheels on the trailer and a set of dual wheels on the rear of the truck and single wheels on the front. He was hauling railroad rails and pipe, weighing approximately eighteen tons, one-third of the load resting on the bunk of the truck and two-thirds on the bunk of the trailer, the distance between the two bunks being twenty feet. On cross-examination, he further testified:

"Q. In other words, the load was laid on the truck and on the trailer and then it overhung the bed of the trailer about five or five and a half feet; is that correct? A. Yes, sir, that is right. Q. You say you were traveling somewhere between five and ten miles an hour, but I didn't get at what point you gave that speed. Was that the time —— A. That was the time of the impact."

He also stated that he had just passed the crest of the hill when the truck was stopped, because of defective light, by Mr. Brittingham, the state police officer.

Mr. Brittingham, as a witness for the defendants, testified as follows:

"Q. I will ask you if you had occasion to and did observe that collision or the incidents leading up to it immediately, Officer? A. Well, I didn't see the contact, I was standing in front of the truck when the contact took place. I was stopping the truck. Q. Will you tell the jury whether you had seen the truck earlier

in the evening. Had you? A. I had. Q. Just tell the jury where you were going. A. Well, I was on my way into Pendleton and I met the truck coming up the grade, the Rieth Ridge, we call it, and I noticed the clearance lights weren't as bright as they were— they were practically all amber lights, so I turned around and dropped in behind the truck to wait until it got over the hill, to stop it. In the meantime another farm truck had come by without any clearance lights and I had pulled out around this Alaska Junk truck and stopped the farm truck and told him to get his lights fixed. Well, he had the lights but he didn't have them on, and I come back and parked my car on the right hand side of the road off the roadway and walked up towards the Alaska truck to meet it and was flagging it down and pulling it off the road when the accident occurred. * * * Q. I believe you stated you stopped back up the road a ways? A. Yes, I did. Q. What side of the road did you park on, Officer? A. I parked on the right hand side. Q. On the right hand side of the road? A. Yes, going east. Q. Pardon? A. The right hand side of the road going east. Q. On the shoulder of the road? A. Clear off the roadway. Q. Clear off the roadway? A. Yes. Q. And your lights, did you leave them on? A. On 'park'. Q. Left them on 'park'? A. Yes. Q. Then you state that you walked down toward the truck? A. I did. Q. Where was it when you saw it? Had it cleared the ridge? A. It was just breaking over the ridge. Q. Just breaking over the ridge. And on what side of the road was it during all of that time and at the time of the impact? A. It was traveling on his right hand side of the road. Q. On the —— A. Going west. Q. On the truck driver's right hand side of the road; is that correct? A. Yes. Q. Traveling west? A. Going west. Q. Yes. Did you hear the other car approaching, Officer? A. Yes, I heard the other car coming. Q. And what about the noise, could you tell the jury what you did hear? A. You could tell there was a car coming, traveling along, I couldn't see what rate of

speed, because I wasn't behind the car checking it. I just stepped over to the edge of the road to let the car on by. Q. Was it a loud noise? A. It was a new car. It didn't make a very loud noise. Q. Was the left side of the highway obstructed at all, Officer? Was there anything to keep that car from turning and going around the truck. A. No, there wasn't. Q. Then what happened at the time of the impact? A. Well, I was standing there waiting for the car to come around and pretty soon I heard the brakes, set the brakes, and heard the tires squealing and then the impact, and then I walked around there and here this Chevrolet sedan sat and the front end all tore up, tore to pieces and the man sitting in the car was Mr. Kiddle, all cut up, his face cut up, and so we tried to —— * * * * Q. Did you make any investigation at the accident, Officer, looking for marks? A. I checked the skid marks where the car was sitting after the impact. Q. And what did you find out about those marks? A. I found that the car had slid eighty feet before the point of impact, from the time he set the brakes to the point of impact. Q. And what about the character of those marks, Officer? Would you say they were light marks or deep marks, or what about them? A. The brakes were set pretty solid, pretty tight, and they were—left pretty deep marks. * * * * *

"Q. Mr. Brittingham, why did you stop the Alaska Junk Company car? A. For his clearance lights. Q. When you came up behind him, as I understand it, you first passed him going in the opposite direction? A. I did. Q. Were you on the hill then? Was he on the hill? A. Yes. Q. And then you turned around down at the bottom of the hill, did you? A. I turned around right behind him. Q. Did you notice anything about his load at that time or at any other time? A. I just noticed he was loaded pretty heavy with steel, the truck was going very slow. Q. How far, if you know, was that steel extending beyond the bed of the truck? A. From five to five and a half feet. Q. From five to five and a half feet. I will ask you whether

or not there was any light or reflector on the end of that load of steel? A. No. * * *

"Q. Mr. Brittingham, were there any load chains on this load? A. Yes. Q. I will ask you whether or not they obscured the rear lights, if any there were, on the bed, that is, on the truck itself or on the trailer itself? A. Well, they partly obscured the clearance lights. Q. How about the rear lights? A. They had only reflectors on the back of the trailer. Q. Didn't have any rear light on the back of the trailer? A. No. Q. There was an absence of rear light on the back of the trailer? A. Yes. Q. And where was the reflector on the back of the trailer? A. Set up on the trailer on the bolsters that go across for the bed to lay on. Q. Just a minute. A. On the back of the bed. Q. On the back of the bed. Would that be under the load? A. Underneath the bed, where the bolster goes across to lay the bed on. Q. That would be under the bottom of the load; is that right. A. Yes, under the bed. Q. And the load overhung those? A. Yes. Q. Five and a half feet? A. It didn't lay down. Q. It was out past that at least five or five and a half feet. There was no rear light or rear reflector on the end of the load? A. No, not on the steel itself."

It is impossible to determine from the testimony the exact spot where the collision occurred and, hence, it is impossible to say how far the truck had passed beyond the crest of the hill when plaintiff, in ascending the hill, had reached the point where he could have first seen the truck had it been daylight and not dark at the time. The plaintiff testified that he estimated the distance from the crest of the hill to where the collision occurred at 200 yards but he qualified his testimony by saying that it was merely an estimate and that it was dark at the time. The driver of the truck testified that the accident occurred just after the truck had passed the crest of the hill, while the police

officer testified, in effect, that he commenced to flag the truck as it broke over the hill. Hence, so far as the evidence shows, the collision may have occurred much closer to the crest of the hill than the distance estimated by the plaintiff. It is true there were photographs of the highway offered in evidence but no one testified that they showed the exact spot where the collision occurred.

Notwithstanding this and based wholly upon the testimony of the plaintiff to which we have referred, the trial court, in ten separate instructions, charged the jury that the plaintiff could not recover if he was driving his automobile at an excessive rate of speed, or if he failed to have his automobile under proper or any control, or if he failed to keep a proper lookout, or if he failed to stop his automobile, or if he failed to swerve to his left to avoid striking defendants' truck, or if he was driving his automobile with defective and insufficient lights.

The objection to these instructions is not that they did not correctly state a principle of law but that there was no evidence in the case to justify the court in giving them. Certainly, it cannot reasonably be said, when considering plaintiff's testimony and the circumstances surrounding the accident, that they were sufficient to warrant the jury in inferring that the plaintiff was driving at an excessive rate of speed, or that he did not have his automobile under control, or failed to keep a proper lookout, or failed to swerve to the left, or was driving with defective or insufficient lights, or that he was in any way guilty of contributory negligence. He had just passed the crest of the hill and reached a position where, had it been daylight or had defendants' truck had any lights

burning which could have been seen from the rear, he could first observe what was ahead of him. Every one knows the color of railroad rails and of used pipes sold for junk and knows that, with their ends protruding beyond the rear of the vehicle on which they are being carried without lights or reflectors visible from the rear, they could not be easily discernible to the driver of an automobile following the vehicle along an unlighted highway, as was the case here.

For the information of the public, Honorable Earl Snell, secretary of state, has had printed and distributed a reaction time chart, showing how far a car traveling at different given speeds would go before the driver could move his foot from the accelerator to the brake and the distance which the car would travel when going at such speeds before it could be stopped by the application of the brakes. As applicable to automobiles traveling at the two speeds of 40 and 50 miles per hour, the reaction time shown by the chart in fractions of a second and the distance which would be traveled before the brakes could be applied are as follows:

| Miles per hr. | 1 sec. | 7/8 sec. | 3/4 sec. | 5/8 sec. | 1/2 sec. | 3/8 sec. | 1/4 sec. |
|---|---|---|---|---|---|---|---|
| 40 | 58 2/3 ft. | 51 1/3 ft. | 44 ft. | 36 2/3 ft. | 29 1/3 ft. | 22 ft. | 14 2/3 ft. |
| 50 | 73 1/3 ft. | 64 1/6 ft. | 55 ft. | 45 5/6 ft. | 36 2/3 ft. | 27½ ft. | 18 1/3 ft. |

The braking distance, when traveling at 40 miles per hour is given as 88 feet, and, when traveling at 50 miles per hour, is 137½ feet, before the car is completely stopped.

However accurate or inaccurate this chart may be, and we do not doubt its accuracy since obviously it was based upon a study made by experts after a large number of experiments had been made and was dis-

tributed to the public for the purpose of insuring safety on the highway, it shows the fallacy of permitting a jury to speculate on what a reasonable man would or would not do when confronted with an unexpected danger and who, at the most, would have only three or four seconds to act. No one knows how long it would take any particular person traveling on a dark night at the rate of 45 miles per hour, or 66 feet per second, to ascertain whether a vehicle ahead of him on the highway, with no rear lights or reflector, was moving or stationary, or what, under such circumstances, his reactions would then be.

The burden of proving that the plaintiff was guilty of contributory negligence was on the defendants and they offered no testimony tending to prove that issue and, since there was nothing in plaintiff's testimony tending to show that any negligence upon his part contributed to the accident, it was error for the trial court to charge the jury that it could find for the defendants if they found that the plaintiff was negligent in any of the particulars alleged in the answer.

In this connection, it must be remembered that the state officer testified that, before he commenced to flag the defendants' truck, he had parked his car off the traveled part of the highway facing east, with his lights on "park". How far the officer's car was in front of the truck when the collision occurred the evidence does not disclose but, seeing these lights, the plaintiff had a right to assume that this car was approaching on his left and, therefore, that he could not swerve to his left because of the possibility of coming into collision with an automobile which he had a right to assume was approaching on his left. While it is true that the driver of an automobile is bound to

keep a proper lookout for the traffic on the highway in front of him, he has a right to assume that all trucks or other motor vehicles which are ahead of him on the highway and going in the same direction will, in the night, have their rear ends lighted, as provided by law, and the plaintiff had a right to act upon that assumption on the night of the accident.

Hence, although the statute which was then in force—sections 55-2601 and 55-2603, Oregon Code 1935 Supplement—then required that the head lamps of motor vehicles shall be so constructed, arranged and adjusted as to render clearly discernible a person 200 feet ahead on a straight, unlighted highway, nevertheless the trial court, upon the mere proof of the happening of the accident alone and in the absence of any proof that the plaintiff was negligent in any respect, was not justified in submitting the issue of plaintiff's contributory negligence to the jury and the submission of such questions was reversible error.

In setting out the above testimony, we have endeavored to include the statements of every witness which have a possible bearing upon the questions involved upon this appeal. This is done for two reasons: (1) in order to show the entire lack of evidence showing or tending to show any negligence upon the part of the plaintiff, and (2), because of the effect which this decision may have upon future litigation. If this judgment is upheld and the doctrine announced by the majority opinion becomes the law of this state, then any driver of an automobile on an unlighted highway at night, following a truck which has no lights visible from the rear, will be devoid of all remedy if, without any fault of his own, he comes into collision with the truck, regardless of the injuries sustained thereby.

This doctrine, if adopted, would place the entire burden of proof upon the person injured and relieve the negligent truck owner, whose fault had caused the injury, from any necessity of proving contributory negligence of the party injured.

Moreover, it seems clear that when the plaintiff first saw the truck looming up in front of him, as he says it was, he was confronted with an emergency and, therefore, that it was reversible error for the court to refuse to give the instructions requested by the plaintiff which correctly stated the rules of law applicable to persons who, without any fault of their own and through the negligence of others, are compelled to act instantaneously and without deliberation.

For these reasons, the judgment should be reversed and the cause remanded for a new trial.

ROSSMAN, J., concurs.

---

Argued on rehearing September 17; former opinion adhered to October 21, 1941

ON REHEARING

(117 P. (2d) 983)

BAILEY, J. The appellant in his petition set forth six reasons why this court should grant him a rehearing. They are the following:

"1. The court erred in holding that there is evidence in the record to support the allegation of contributory negligence in that the plaintiff was driving his automobile while equipped with defective and insufficient lights.

"2. The court erred in holding that there was a taillight on the truck and a rear reflector on the trailer.

"3. The court erred in holding that there was no other vehicle or obstruction on the left side of the highway at the scene of the accident.

"4. The court erred in holding that plaintiff's request that the jury be instructed upon the doctrine of sudden emergency was properly refused.

"5. The court erred in holding that the defendants' theory of the case alleging contributory negligence was not over-emphasized.

"6. The court erred in holding that the trial court might, upon the mere proof of the happening of the accident alone, and in the absence of any proof that the plaintiff was negligent in any respect, submit the issue of plaintiff's contributory negligence to the jury."

A rehearing was had. Only one of the above-mentioned grounds for requesting a rehearing was discussed in the petitioner's brief or touched upon in the oral argument. That was our holding that the trial court did not err in submitting to the jury the question of the insufficiency or defectiveness of the lights of the plaintiff's automobile.

The fourth and fifth grounds assigned in the petition are fully covered by the original opinion. As to the second and third grounds, there was evidence from which the jury could have found that there were lights on the truck and both lights and a reflector on the trailer, and could further have found that there was no vehicle or obstruction on the left side of the highway at the scene of the accident.

■ In order to ascertain what are the questions presented to this court on appeal, we are guided by the assignments of error contained in the appellant's opening brief. Only three assignments were mentioned by the appellant herein, namely:

"I. The court erred in submitting to the jury the question of the sufficiency of plaintiff's headlights

. . . and in refusing plaintiff's requested instruction Number 7 a, withdrawing from the jury's consideration the allegation relative to the sufficiency of plaintiff's lights.

"II. The court erred in refusing to give plaintiff's requested instructions Numbers 6 and 7, relative to sudden emergency.

"III. The court erred in over-emphasizing defendant's theory of the case by reiterating instructions in reference to contributory negligence."

The principal question left for consideration is whether there was substantial evidence from which the jury could find that the plaintiff's headlights were either defective or inadequate. Before discussing this matter, it is advisable to refer to the testimony in the case as to the lights and reflectors on the defendants' truck and trailer.

The defendant Carroll, driver of the truck at the time of the accident, testified that he had left Pendleton about four o'clock in the afternoon and that the accident occurred about five-thirty-five. He then gave the following testimony:

"Q. And what about the lights? Tell the jury what lights there were on the truck when you left there. A. There were two clearance lights and the taillight and the reflector on the rear and then I had my front clearance lights and my headlights.

"Q. Now, what about the rear lights and rear reflector? A. Well, the clearance lights were on the bolster and the rear taillight was on the end of the reach and the reflector was right beside the taillight on the reach.

"Q. This reach is the thing that sticks out from the rear of the truck, is it? A. Yes, sir. A. About how far from the rear of the axle does this reach stick out? A. Well, from the back of the trailer itself, about five feet.

"Q. And what happened to your lighting equipment on that as a result of the accident? A. Well, I had the taillight and one clearance light knocked out. Q. As a result of the accident? A. Yes, sir.

"Q. Where did your reach come, that is, extending the rear of the truck, how was it with respect to the end of your load? A. It was just even. Q. It was about five feet out, too; is that right? A. Yes."

Mr. Fitch, who was a service station operator at Pendleton, Oregon, testified that the defendants' truck and trailer were at his place of business most of the day of the accident, undergoing repairs. He stated that he had observed the lighting equipment, "checked all of the lights" on the truck and trailer, immediately prior to Carroll's leaving Pendleton. This further testimony was then given by him:

"There were two dimension lights on the back of the trailer at the outside of the steel bolster, both burning at that time, and there was a taillight on the reach and a reflector on the end of the reach also, both the reflector and light were on the reach; on the front of the truck there were two amber lenses and on the rearview mirror of the truck there was another amber lens in the truck, definitely to define the side of the truck itself for a passing car to go around it."

On cross-examination this witness testified that the clearance lights on the truck and trailer and the taillight on the end of the trailer were all burning when the truck left his station. He also stated that the taillight on the trailer was "on the same lighting arrangement with the clearance lights on the trailer."

According to the weather report introduced in evidence, the sun set at Pendleton on the day of the accident, November 6, 1938, at four-thirty-six o'clock.

A state police officer called as a witness, on cross-examination by plaintiff's counsel, gave the following testimony:

"Q. Mr. Brittingham, were there any load chains on this load? A. Yes. Q. I will ask you whether or not they obscured the rear lights, if any there were, on the bed, that is, on the truck itself or on the trailer itself. A. Well, they partly obscured the clearance lights.

"Q. How about the rear lights? A. They had only reflectors on the back of the trailer. Q. Didn't have any rear lights on the back of the trailer? A. No."

■■ The testimony of this witness differs somewhat from that of the truck driver and the service station operator, as to the location of the reflector on the trailer and the presence of any light on the trailer. It is not our function, however, to resolve the conflicts in testimony. That is the province of the jury. It is sufficient to say that there was evidence from which the jury could have found not only that there was a reflector on the end of the trailer, which was not concealed by any overhanging load, but also that there were lights on the rear of the trailer and on the sides of the truck and the trailer.

It is not our purpose here to restate what was said in our former opinion regarding the sufficiency of the evidence to place before the jury the question of adequacy of the headlights on the plaintiff's automobile. The collision which caused the plaintiff's injury was the result of his driving his car into the rear end of another vehicle ahead of him on the highway. According to his own testimony, the plaintiff did not see the defendants' truck and trailer in time either to stop his car or turn it to the left side of the highway. If he had seen the truck at a distance of two hundred

feet prior to the collision, he undoubtedly would have had time to steer his car to the left and avoid striking it, or to bring his car to a stop, if not traveling at a speed greater than that to which he testified, forty-five miles an hour. The further fact that the plaintiff did not see the reflector on the end of the trailer is some evidence that he either was not keeping a proper lookout or that his headlights were defective.

It is true that the plaintiff testified that his car was a Chevrolet about three and a half months old, driven some seven thousand miles, and that he supposed that his automobile was "about like any other Chevrolet car. I know the lights were good and hadn't caused any trouble." He further stated that at the time of the accident his lights were turned on "bright". No evidence was produced of any inspection made of his lights. He did not know the radius of their beam. Nor did he know how far the truck was ahead of him when he first saw it.

In 2 Berry on Automobiles, 7th Ed., § 2.932, page 443, is the following statement: "It has been held to be negligent for the driver of an automobile to drive on a highway at night at such a rate of speed that he can not stop in time to avoid objects after they come within the area lighted by his lamps." Cases from many states supporting the text are cited below this section, both in the permanent volume and in the pocket supplement.

In 1 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., § 741, decisions from many jurisdictions are cited to the proposition that "the rule accepted by the great weight of the authorities is that a driver is not exercising ordinary care and is negligent, if he proceeds at such a speed in the dark

that he can not bring his automobile to a standstill within the distance that he can plainly see objects or obstructions ahead of him by the light of his own lamps or other available light.''

The great preponderance of the authorities is to the effect that a plaintiff driving his car as did the plaintiff in this case would be chargeable with contributory negligence, barring his recovery. The defendants were invoking this latter doctrine in making the following argument in their brief:

''Thus, the evidence is practically conclusive that he did not see the truck at the statutory distance of 200 feet. The only alternative inferences are that *either he was not keeping a proper lookout or else his lights were not adequate for that distance.* Either horn of this dilemma brands him guilty of contributory negligence, and in the latter case it was negligence *per se.*''

■ We do not now hold, and did not in our original opinion decide, that the plaintiff was guilty of contributory negligence, or any negligence. We now hold, and did then rule, that whether the plaintiff was chargeable with any negligence and whether that negligence, if any, contributed to his injury, were questions for the jury. This court has not adopted the majority rule above stated, but what seems to be the minority rule that the question of the plaintiff's contributory negligence is for the jury. See *Alt v. Krebs,* 161 Or. 256, 88 P. (2d) 804, and cases therein cited.

In *Baldwin v. Norwalk,* 96 Conn. 1, 112 A. 660, the defendant city urged that the plaintiff, who was injured when his automobile collided with a substantial object in a street at night, because of defective lights, was guilty of contributory negligence. It was argued by the defendant that the plaintiff either did not have the lights required by statute and hence failed to see

the object, or saw the object and did not avoid striking it. In answer to that contention the court said:

"We do not construe the statute so as to create this dilemma. The statute must be construed in the light of common knowledge. It is common knowledge that substantial objects because of their composition or coloring, and the coloring of the surface or object upon which they rest, are visible in greatly varying degrees when artificial light is thrown upon them. They are not necessarily clearly visible.

"The plaintiff claimed that he was keeping a reasonable lookout upon the road ahead of him, but, by reason of the dark color of the mass of debris and the lights and shadows, he did not see the pile of debris of which he had no prior knowledge. It was a question for the jury to determine whether the plaintiff had at the time the lights required by statute, and whether a failure to have such lights was a proximate cause of the accident, and whether, if he had such lights, he was in the exercise of due care in failing to see and avoid the pile of debris under the surrounding circumstances on the night in question."

*Mostov v. Unkefer*, 24 Ohio A. 420, 157 N. E. 714, is typical of the cases of relaxation of the majority rule, above mentioned, declaring the plaintiff guilty of contributory negligence as a matter of law because of failure to stop his car within his range of vision. Therein the defendant was a dealer in paper stock and scrap iron. The driver of one of the defendant's trucks late in the afternoon ran short of gasoline and left the truck parked on the right side of the pavement while he went to get gasoline. In that instance, differing from the case at bar, the truck was stopped and there were no lights on it. A passenger automobile collided with the rear of the truck. The driver of that car testified that he could see a substantial object two hundred feet ahead and that he actually saw the truck when seventy-

five or one hundred feet distant from it and could have stopped his car within thirty to fifty feet. He explained the collision by saying that he was "constantly keeping a lookout ahead" and that when he saw the truck he applied the brakes of his car as quickly as he was able.

In passing upon the question of whether there should have been a directed verdict for the defendant, the court said:

"Are we able to say, as a matter of law, that the driver's explanation was untrue or impossible? If not, then it is for the jury to determine its truth and probability. The plaintiff testified that the truck was not a substantial object, and the jury found, in answering one of the interrogatories, that it was not. The court, it seems, did not define the meaning of that term, within the meaning of the Michigan statute. However that may be, it seems to us that the driver might have been exercising ordinary care in keeping a lookout ahead, and the background of the truck, its peculiar construction, and the reflection of the light thereon might have been such that it was impossible for the driver to discern it, by the exercise of such care, until he approached to within 70 or 100 feet."

The court concluded that in the light of the facts therein stated the question of whether the driver of the passenger automobile was contributorily negligent was for the jury.

The defendant in *Kadlec v. Al. Johnson Construction Co.*, 217 Iowa 299, 252 N. W. 103, at the conclusion of the trial moved for a directed verdict in its favor, on the ground that the plaintiff was guilty of contributory negligence. The motion was granted, and on appeal the supreme court reversed the judgment, holding that in view of the facts the question of whether the plaintiff was chargeable with contributory negligence was for the jury. Among the facts offered in evidence by the

plaintiff to establish an excuse for his "violation of the 'assured clearance distance ahead statute' " were "the color of the truck, blending with the color of the roadway, the lights and shadows from the overhanging tree branches cast upon the street, and the oncoming lighted car." In ruling that the evidence in the case made the question of the plaintiff's contributory negligence one of fact rather than law, the court said:

"Although a wire stretched across a street or sidewalk or small stake attached to an unlighted truck in the roadway may be undiscernible because of its size, it might also be possible for an unlighted object on the highway to be undiscernible, if so camouflaged by color, lights and shadows that it blends in with the highway as to make it appear like part of the road. In such case it might not be clearly discernible by persons approaching it, although exercising ordinary care, *and, if not, a jury question as to its visibility might properly arise.*" (Italics supplied.)

The court of appeals of Louisiana in *Holcomb v. Perry*, 19 La. A. 11, 138 So. 692, held that on the facts in that case the plaintiff was not negligent in not seeing an unlighted automobile parked along the side of a highway. The trial court had found for the defendant, and the appellate court retried the facts and entered judgment in favor of the plaintiff. Upon investigation of the constitution of Louisiana we have found therein no provision similar to that of the Oregon constitution regarding jury trials. To the contrary, in Louisiana all cases before the court of appeals "shall be tried on the original record, pleadings and evidence" (article VII, § 27, constitution of Louisiana), and "all appeals shall be both upon the law and the facts" (article VII, § 29, id.). We do not construe the decision of the appellate court as stating that the plaintiff was, as a

matter of law, not chargeable with contributory negligence.

The reports are replete with decisions pronouncing plaintiffs guilty of contributory negligence as a matter of law when unable to see substantial objects on or near the highway in time to avoid a collision. Many of these adjudications concern vehicles parked at night without lights.

There are other cases which relax the above-mentioned stringent rule and hold that under peculiar circumstances the question of the plaintiff's negligence is one of fact for the jury. We have found no cases ruling that as a matter of law the plaintiff is not guilty of contributory negligence.

It is now urged by the appellant that he could not have seen the truck sooner than he did because the accident occurred just after he reached the crest of a hill, and that, therefore, his headlights would not have shone on the truck and trailer. The only testimony in this connection is that of the plaintiff himself, describing the place of the accident as approximately six hundred feet or two hundred yards westerly from the crest of a hill. If the accident occurred as suggested by plaintiff's counsel, then there was all the more reason why the plaintiff should have been alert to what might lie ahead of him and should have slackened the speed of his car. There were, however, introduced in evidence by the plaintiff, as the defendants' exhibits, two photographs, one, as explained at the trial by plaintiff's counsel, looking westward, and the other eastward.

The latter view shows the highway for a considerable distance, as indicated by the number of telephone poles in sight, ten clearly visible and others less distinct, which we may assume to be placed at the

usual intervals. This photograph tends to support the plaintiff's estimate of the distance between the crest of the hill and the place of the accident as six hundred feet, or even more. In explaining it at the time it was admitted in evidence, counsel for the plaintiff stated: "Number five here is looking back toward Pendleton and the hill about which we have been talking is just beyond the horizon there. In other words, it isn't shown in this picture. The hill that we had been talking about, that is the top of it there."

Exception is taken by counsel for the plaintiff to the statement in our former opinion that "there was no other vehicle or obstruction on the left side" of the highway. At the time of making that statement we had in mind the fact that the state police officer's car was parked a short distance west of the truck, facing eastward. The officer testified that he parked his automobile "off the roadway . . . clear off the roadway," and left only his parking lights burning. He further testified as follows:

"Q. Was the left side of the highway obstructed at all, officer? Was there anything to keep that car from turning out and going around the truck? A. No, there wasn't."

The plaintiff was asked if he made any attempt at all to turn out, and answered, "I didn't have time." Nowhere in the record is there testimony of the plaintiff that he saw the officer's car or its lights. Since the truck was between the plaintiff and the officer's parked car, the plaintiff would probably have seen the truck if he had seen the lights of the car. He does not say that he saw the lights on the police car parked west of the truck, much less that they blinded him or deterred him from turning to the left to avoid the truck.

██ ██ It is the province of the jury to pass upon questions of fact. There is substantial evidence in the record from which the jury could have found that the defendants were not negligent, but that the plaintiff was negligent and was not entitled to recover. We do not know on what basis it reached the conclusion announced in its verdict. The mere fact that plaintiff suffered injuries was not alone sufficient as a ground for finding that the defendants were negligent and that their negligence was the proximate cause of the accident. The mishap occurred on a straight and level length of a newly constructed, modern highway, on a clear night with visibility of thirty miles. We ought not to permit ourselves to usurp the function of the jury and substitute our conjecture for its findings.

After carefully reconsidering the assignments of error set forth in the appellant's opening brief and weighing the reasons advanced for requesting a rehearing, we are convinced that the circuit court committed no error in the respects urged by the appellant.

There is this further matter to be considered: Should this court reverse the judgment appealed from because of the trial court's giving a certain instruction, even if erroneous in part, and its failure to give an instruction requested by the appellant, in the absence of any assignment of error based thereon and in view of the state of the record presently to be mentioned? The instruction given was the following:

"You are instructed that the law requires the plaintiff to have his automobile equipped with lights which would throw sufficient light ahead to make clearly visible all vehicles, persons, or substantial objects upon the roadway within distance of two hundred feet. Likewise you are instructed that if you find from the plaintiff's testimony that he failed to have his car equipped

with lights sufficient to make clearly visible the defendants' truck at a distance of two hundred feet, then the plaintiff would be negligent and could not recover.''

When this instruction was given, the plaintiff thus excepted:

''The plaintiff excepts to the instruction of the court upon the issue of lights upon the plaintiff's automobile for the reason that there is no evidence in the record which shows that the plaintiff's lights were not proper, and surely no evidence in the record adduced by the defendants or any one else in this case that the lights were improper or otherwise incorrect under the allegations of defendants' answer.''

The law in effect at the time the accident occurred required motor vehicles driven on highways to be equipped with head lamps ''so constructed, arranged and adjusted that'' they would at all times, under normal atmospheric conditions, and on a level road, ''produce a driving light sufficient to render clearly discernible a person two hundred'' feet ahead: § 55-2603, Oregon Code 1935 Supplement. After the accident occurred and before the case was tried, this law was amended to provide as follows:

''The intensity of the light of single-beam head lamps shall be sufficient to reveal persons and vehicles upon a street or highway at a distance of at least 200 feet ahead of the vehicle to which they are attached.'' § 115-370, subdivision c (2), O. C. L. A.

It will be noted that the law in effect at the time of the accident stated only that persons should be discernible and did not mention vehicles, whereas the amendment of 1939 added vehicles.

The plaintiff did not call the attention of the trial court to the fact that the instruction given was apparently based on the 1939 law instead of § 55-2603,

*supra.* In fact, the appellant has at no time complained of the instruction on that ground. If the mistake had been noticed by plaintiff's counsel, it would undoubtedly have been regarded as harmless. Obviously, a light sufficient to make a person discernible at two hundred feet would as clearly reveal as large an object as a truck or a trailer at the same distance.

The instruction as given also stated to the jury that if it found from the plaintiff's testimony that he failed to have on his automobile lights sufficient to make discernible the defendants' truck at a distance of two hundred feet, then the plaintiff would be negligent and could not recover. In the instruction should have been included this condition, "and if his negligence contributed to his injury," preceding the last four words, "he could not recover."

These defects were not mentioned in the plaintiff's exception to the instruction, nor was the exception taken in respect to either. Moreover, they were not, as above stated, mentioned in any assignment of error or discussed in any brief of the appellant. We therefore have a situation in which the trial court was not given an opportunity to correct its instruction in the manner indicated, and the defendants have not had an opportunity to present any argument as to whether the omission was prejudicial in view of the facts in the case and the remainder of the charge given by the court.

■■ We see no reason why we should zealously search, sift and winnow the record to find some ground for reversing the judgment of the circuit court rendered on the verdict of a jury. It has been held so many times by this court that only error properly assigned will be considered on appeal that it is needless to cite authorities on the point. We have also held, times innumerable,

that in order to raise any objection to an instruction given by the court, exception must be properly taken during the trial and the court given an opportunity to make correction.

■ We do not believe that the jury was misled in any way by the giving of the above-mentioned instruction. The court not once, but three times, in the twenty-one pages of its charge, admonished the jury that the plaintiff's negligence, if any, must have contributed to his injury to prevent him from recovering.

■ The plaintiff requested the court to instruct the jury "that the driver of a motor vehicle in the absence of notice to the contrary, has a right to assume that other persons using the highway will obey the requirements of the motor vehicle law." To the failure to give this instruction the plaintiff excepted. He did not, however, assign as error the court's failure so to instruct the jury, nor has he mentioned it in any of his briefs.

In 4 C. J. S., "Appeal and Error", § 1239, page 1734, with reference to the exception made in some jurisdictions to the rule that only error assigned may be considered on appeal, by permitting the appellate court to notice error not assigned but apparent on the face of the record, this is said:

"Under an exception dispensing with the necessity of an assignment of error in the case of 'an error of law, apparent upon the face of the record,' the appellate court may and must consider errors coming within the terms of the exception without their being assigned. Such an exception, however, does not comprehend every error which can be ascertained by looking into the record, but means that it must be 'a fundamental error, such error as being readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily,' or, as otherwise ex-

pressed, 'such manifest error as when removed destroys the foundation of the judgment.' Moreover, an alleged error which depends upon an examination of the evidence or upon a mixed question of law and fact, and which requires an examination of the whole record, including the pleadings and the evidence or statement of facts, is not as a rule a fundamental error of law apparent on the record which must be considered without being assigned under such an exception.''

See also 3 Am. Jur., ''Appeal and Error'', § 770, page 332.

Our conclusion is that the judgment appealed from should be affirmed, and we adhere to our former opinion.

———

ROSSMAN, J. (dissenting). By virtue of the opinion of the majority, if a truck owner, at nighttime, should drive his vehicle upon the highway, park it upon the paved portion, turn off his taillights, and then some motorist, whose headlights were burning, should collide with the rear of the truck and meet with death or mangling injuries, there could be no recovery. Under the opinion of the majority, the motorist would be conclusively guilty of contributory negligence—because he either (1) failed to maintain an adequate lookout, or (2) failed to throw upon the truck sufficient light from his headlights to render the truck ''clearly visible.'' The instructions given to the jury by the trial judge, and attacked by proper exceptions, will shortly be quoted. The majority find no fault with them. The instructions told the jury that the plaintiff was negligent if he failed to maintain an adequate lookout ahead and if he did not throw upon the unlighted truck sufficient illumination ''to make it clearly visible.'' Those

are the words of the instructions. Of course, if he was required to make the truck clearly visible—and the headlight law in effect at the time of the accident contained no such requirement—he should have seen it. Thus, this plaintiff was condemned of contributory negligence no matter which way he turned. Had any member of this court been upon the jury and had been obedient to the instructions, he, too, would have been compelled to return a verdict for the defendants. Therefore, the instructions were in effect a directed verdict for the defendants. This court ought to be frank and recognize the true nature of the error. Pecking away at this or that minor slip-up of the plaintiff's counsel will not suffice. Nor does it help in settling this appeal upon its merits to quote propositions of law which this court has definitely rejected. I refer to the majority's quotations from 2 Berry on Automobiles (7th ed.), § 2,932, and 1 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) § 741. As recently as 1939, in *Alt v. Krebs*, 161 Or. 256, 88 P. (2d) 804, we rejected the rule which the majority quoted from these two treatises. Referring to it, our decision termed it "a doctrine definitely rejected by this court in *Murphy v. Hawthorne*, supra." But if the majority's present flirtation with that rule were based upon real affection and understanding they would give effect to the words which they quoted from Blashfield and which say "by the light of his own lamps or other available light." Had there been "other available light," that is, light in the defendants' taillamp, this accident would never have occurred.

It will be recalled from what is said in the previous decisions that the accident under consideration happened in the night and that the night was dark. The

evidence not only authorizes, but virtually demands, a finding that the rear of the defendants' truck-trailer bore no lights. The clearance (side) lights were concealed, or at least partly so, from the rear by chains which held in place a heavy load. In fact, those lights, even when viewed from the front, were inadequate, and that was the reason a police officer was stopping the truck.

The headlight statute which was in effect at the time of the accident (1931 Session Laws, Ch. 360, § 60, Oregon Code 1935 Suppl., § 55-2603) said:

"The head lamps of motor vehicles shall be so constructed, arranged and adjusted that  *  *  *  they will at all times  *  *  *  produce a driving light sufficient to render clearly discernible a person two hundred (200) feet ahead, but shall not project a glaring or dazzling light to persons in front of such head lamp."

It will be observed that the requirement was to render discernible "a person." Although those were the words of the statute, the instruction told the jury that "the law requires the plaintiff to have his automobile equipped with lights which would throw sufficient light ahead to make clearly visible all vehicles, persons or substantial objects upon the roadway within a distance of two hundred feet. Likewise you are instructed that if you find  *  *  *  that he failed to have his car equipped with lights sufficient to make clearly visible the defendants' truck at a distance of two hundred feet, then the plaintiff would be negligent and could not recover." Thus, the instruction added to the statute's requirements "all vehicles", "substantial objects" and "the defendants' truck".

To that instruction the plaintiff excepted. The words of his counsel follow: "The plaintiff excepts to

the instruction of the Court upon the issue of lights upon the plaintiff's automobile for the reason that there is no evidence in the record which shows that the plaintiff's lights were not proper, and surely no evidence in the record adduced by the defendants or anyone else in this case that the lights were improper or otherwise incorrect under the allegation of defendants' answer.''

The plaintiff had asked that the jury be instructed: ''There has been no evidence adduced in support of defendants' allegation in their amended complaint (answer) that the plaintiff was driving his automobile while equipped with defective and insufficient lights, and therefore I withdraw from your consideration that particular allegation of the amended answer.'' Plaintiff saved an exception to the refusal.

It will be recalled that although the words of the statute are ''sufficient to render clearly discernible a person two hundred (200) feet ahead,'' the instruction, after adding to the statutory requirement ''all vehicles'' and ''substantial objects'', expressly exacted of the plaintiff's lights that they ''make clearly visible defendants' truck at a distance of two hundred feet.'' The error is manifest. A word of explanation will show that the addition to the statutory requirement was material and prejudicial to the plaintiff. A person upon the highway, unlike a vehicle or substantial object, is not required to give notice of his presence there by a display of lights. The primary object of all law is to save human lives. Less regard is shown for the safety of property. The latter is required, for its own safety and the safety of others, to display lights, red flags, flares, etc. Good reason, therefore, supported the provision of the 1931 headlight law which singled

out pedestrians and charged motorists with notice of them upon the highway in an area of two hundred feet ahead of the car, but dealt with vehicles and substantial objects with less consideration.

The plaintiff had requested the trial judge to instruct the jury: "I instruct you that the driver of a motor vehicle, in the absence of notice to the contrary, has a right to assume that other persons using the highway will obey the requirements of the Motor Vehicle Law." The requested instruction was refused and the plaintiff excepted. That instruction should have been given. In fact, it would have been proper to have employed language more specific and to have stated that the plaintiff as he proceeded along his course had a right to assume, in the absence of notice to the contrary, that an unlighted truck was not ahead. Berry, Law of Automobiles (7th ed.) § 3.79. Can there be any doubt that this unfortunate accident would never have happened if the truck-trailer had had a taillight "plainly visible" as required by law for a distance of five hundred feet. Oregon Code 1935 Suppl., § 55-2601. And if there is no doubt upon that subject, and surely there is none, reversible error is indicated in addition to those already mentioned and which I will now develop.

Notwithstanding the fact that the truck failed to display the lights required by our laws, the instructions told the jury that if the plaintiff "failed to have his car equipped with lights sufficient to make clearly visible the defendants' truck at a distance of two hundred feet, then the plaintiff would be negligent and could not recover." It will be noticed that the element of proximate cause was omitted. Very likely the omission was not unintentional and was due to a belief that

since the plaintiff was required to maintain an adequate lookout and was also required to have headlights capable of rendering clearly visible the defendants' truck (so the court believed), the plaintiff was charged, as a matter of law, with knowledge of the presence of the truck the moment he came within two hundred feet of it. In other words, his lookout required him to see everything that was clearly visible, and the headlight law, so the court believed, required him to make the truck clearly visible. Due to a mistaken reading of the statute, the instructions assumed that form and therefore omitted the element of proximate cause. The omission of that element aggravated the errors which we have already pointed out.

A brief review of the facts will illustrate the prejudicial effect of the aforementioned errors. The trailer was attached at its forward end to the rear of the truck and must have been an object difficult of discernment upon the black pavement. It was about twenty feet long. The truck and trailer were coming to a stop upon the paved portion of the highway when the plaintiff's car crashed into the unlighted rear of the trailer. As we have said, the night was dark. A police officer, who had followed the truck-trailer and who was signaling its driver to stop, swore that there were no lights on the rear of the trailer. He said, however, that there was a reflector "on the back of the trailer." The overhanging load, however, obscured even that device. The plaintiff did not see it. It should have been visible for two hundred feet. Oregon Code 1935 Suppl., § 55-2601. The height of the trailer and of the load is not indicated in the record, but evidently the trailer was a low vehicle. It had no body. Its driver described it as a "logging trailer." It consisted merely of its wheels, frame,

axles and two bolsters. One of the latter was over the front and the other over the rear axle. A bolster is the structure over the axles upon which the load rests. The load, which consisted of old rails and gas pipes, was extremely heavy—it weighed eighteen tons. These rails and pipes, which must have been more than thirty feet in length, lay directly upon the bolsters and extended five and one-half feet beyond the rear of the trailer. They also extended beyond the front of the trailer in such a way that one-third of their weight rested upon the rear section of the truck. The record indicates that the load was not a high one. The sides of the trailer and of the truck had no stakes or other similar parts. The load was held in place by chains. Since there was no body to the trailer, there was but little in the darkness for the eye to catch. The pavement was black in color. The wheels of the trailer had dual tires, that is, double tires. Their color manifestly was about the same as the pavement. Old iron reflects no light and has substantially the same color as dark-colored pavement and tires. Attached to the forward end of the trailer was the truck. The record mentions the tonnage and manufacturer's name of that vehicle, but yields no other description of it. However, since one-third of the weight of the rails rested upon the truck, it seems reasonable to assume that the truck was of the kind which we often see upon the highway; that is, it had no body except a low cab in which the driver sat. Hence, the truck, trailer and load were not tall objects which a motorist approaching from the rear could readily see.

Photographs taken at the site of the accident and introduced in evidence by the defendants show that the roadway ran through a shallow cut which, possibly,

was three or four feet deep. Growing upon the slopes and top of the embankment, as shown by the photographs, was tall grass. Such a situation obscures still further a non-lighted object present upon the pavement.

The truck-trailer had passed over the crest of the grade for a distance of about six hundred feet when the accident occurred. This circumstance indicates that in all likelihood this low vehicle was not visible to one approaching the crest from the same direction that the truck was pursuing. It will be recalled that the pavement was black in color. It had a non-skid surface. Such a surface adds to the capacity of the dark color to conceal objects upon the road.

Again, it should be recalled that a police officer was signaling the truck to stop and that it had reduced its speed to about five to ten miles per hour. It was coming to a stop, however, upon the pavement. *Mechler v. McMahon*, 180 Minn. 252, 230 N. W. 776, takes note of the hazards to the motorist in the rear when something of this kind is taking place. In that instance, the car behind did not observe that the unlighted truck was standing still until it was too late. The decision in that case states:

"The headlights of plaintiff's car were burning and an automatic windshield wiper was operating. When about 70 or 80 feet away, plaintiff observed the truck and at first thought that it was moving."

Many other motorists have been similarly deceived. Continuing, the Minnesota court said:

"In an instant he became aware of the fact that it was stationary, applied his brakes and turned his steering wheel to the left for the purpose of passing around the truck. His car failed to respond and skidded into the rear of the truck."

The court held that he was not chargeable, as a matter of law, with notice of the unlighted truck upon the pavement.

One more circumstance must be mentioned. It is stated in the dissenting opinion written by Mr. Justice RAND when this case was originally before us. Frank Brittingham, a police officer who was traveling in a police car in the opposite direction to the truck-trailer, observed its inadequate light. He is the officer mentioned in a preceding paragraph of this opinion. When Brittingham noticed the inadequate lights he shortly reversed his car's direction and then followed the truck until after it had passed over the crest of the hill. It was while he was following the truck-trailer that he noticed the absence of lights upon its rear. After he had made these observations he drove ahead of the truck, turned around and parked his car. He then stepped to the roadway some distance ahead of the truck and was flagging it to a stop with his flashlight when the plaintiff's car crashed into the trailer. At that moment Brittingham's parked car was, of course, facing the on-coming truck and the plaintiff's car. As stated by Mr. Justice RAND, the lights of the officer's parked car were capable of diverting attention from the unlighted truck.

It is apparent from the above review of the evidence that the defendants' truck-trailer could not have been readily discernible upon the black colored pavement. More than one court has spoken of such difficulties. The following is taken from *Baldwin v. City of Norwalk*, 96 Conn. 1, 112 Atl. 660:

"It is common knowledge that substantial objects because of their composition or coloring, and the coloring of the surface of the object upon which they rest, are visible in greatly varying degrees when artificial

light is thrown upon them. They are not necessarily clearly visible.''

From *Kadlec v. Johnson Construction Co.*, 217 Iowa 299, 252 N. W. 103, we quote:

''* * * it might also be possible for an unlighted object on the highway to be undiscernible, if so camouflaged by color, lights and shadows that it blends in with the highway as to make it appear like part of the road. In such case it might not be clearly discernible by persons approaching it, although exercising ordinary care.''

In *Mostov v. Unkefer*, 24 Ohio App. 420, 157 N. E. 714, the court said:

''* * * However that may be, it seems to us that the driver might have been exercising ordinary care in keeping a lookout ahead, and the background of the truck, its peculiar construction, and the reflection of the light thereon might have been such that it was impossible for the driver to discover it, by the exercise of such care, until he approached to within 75 or 100 feet. * * * If a red light had been on the truck, it is probable that the collision would not have taken place.''

From *Holcomb v. Perry*, 19 La. App. 11, 138 So. 692, we quote:

''In holding the driver of an automobile responsible for not seeing a truck or other object with which he has a collision, the character, appearance and visibility of the object must always be taken into consideration. An automobile parked along the side of a highway presents such a surface for the reflection of lights from the headlights of the automobile approaching that the driver is usually bound to see it at such a distance that he can stop his car before reaching it. But in the case of trucks and trailers, with no area at all at the rear to reflect the light of the headlights when the truck is loaded with long slender poles or pipe, it is

different. It cannot be expected that the driver of an automobile will see it in time to avoid a collision, and for that reason he will not be held negligent."

The very fact that the law requires rear lights indicates that unlighted vehicles are, as has often been judicially stated, menaces to the safety of all other users of the common highway.

Although the above makes it clear that the defendants' truck-trailer must have been difficult of discernment, the instructions, through a misreading of the statute, told the jury, as we have already seen, that if the plaintiff's headlights failed "to make clearly visible the defendants' truck at a distance of two hundred feet" he was "negligent and could not recover." Further, they refused to inform the jury that the plaintiff as he drove along was justified in assuming, in the absence of notice to the contrary, that all co-users of the highway would obey the law. As already said, error was committed in both instances.

The effect of the instruction that the plaintiff was required to maintain an adequate lookout and of the errors just mentioned was to render inevitable a verdict for the defendants. The latter so recognize. Their brief states: "The only alternative inferences are that either he was not keeping a proper lookout or else his lights were not adequate for that distance. Either horn of his dilemma brands him guilty of contributory negligence." Of course, if the statute required the plaintiff's headlights to possess such power that they would have rendered "clearly visible" the defendants' truck two hundred feet away (as the instructions required), the plaintiff should have seen the truck. The combined effect of requiring the plaintiff to maintain a lookout for objects that were clearly visible

and to have headlights which would make the truck "clearly visible" was to charge the plaintiff with notice of the truck. For obvious reasons the law will not permit a person who is required to look to deny that he saw an object which was clearly visible; especially not when the law specifically required him, as the trial judge in this case erroneously believed, to make it clearly visible. *Morser v. Southern Pacific Co.,* 124 Or. 384, 262 P. 252. Therefore, as the defendants stated in the language just quoted, the instructions demanded a finding that the plaintiff was guilty of contributory negligence. They recognized no alternative favorable to the plaintiff. They were for all practical purposes a verdict directed for the defendants. In *Baldwin v. City of Norwalk,* supra, the court, in interpreting the headlight law of Connecticut, rejected a contention similar to the one made by the defendants. The facts there were even more favorable to the defendant than the ones before us. In rejecting their contention, the court said: "We do not construe the statute so as to create this dilemma." The error which the instructions before us committed was to assume, without warrant, that the headlight law demanded that the plaintiff's lights should have rendered clearly visible the defendants' truck-trailer. *Barry v. Tyler,* 171 Va. 381, 199 S. E. 496, upon which the defendants principally rely, and from which the majority quoted when this case was originally before us, was based upon a statute (Virginia Code of 1936, § 2154) which required of headlights that they "render clearly discernible a person or object" two hundred feet ahead. Moreover, the truck with which the car collided, according to the uncontradicted testimony, displayed two lighted taillights. There was no evi-

dence that the headlights of the colliding car were burning.

It will be recalled from what was said in the preceding opinions that the plaintiff's uncontradicted testimony showed that his lights were burning on the bright switch and that his car was only three and one-half months old.

It is true that the instructions stated the law of contributory negligence, but that part of them could have been of no avail to the plaintiff after the instructions had demanded a finding that the plaintiff was guilty of contributory negligence. I repeat, the effect of the instructions was a directed verdict for the defendants.

The statement is warranted, I am sure, that error prejudicial to the plaintiff is plainly revealed by the record before us.

Rule 2 of this court states:

"No alleged error of the circuit court will be considered by this court unless regularly presented in the assignments of error contained in the appellant's opening brief."

Because the assignments of error do not specifically mention the above matters the majority deals with this cause as though the record was free from error and as though the issue of plaintiff's contributory negligence had been submitted as an issue of fact to the jury. In fact, the majority rebuke plaintiff's counsel because he "did not call the attention of the trial court to the fact that * * *." Of course, those words would not have been written if error had not been committed. But we observe that when plaintiff's counsel sought to enlarge upon the formal language of exception-taking he was stopped and told to

"just take the exception." The majority do not question the sufficiency of the bill of exceptions as a basis for the consideration of every error which is now under consideration.

Regardless of the merit of deficiency of the assignments of error, the errors aforementioned were committed, and if repetition is again permitted they amount to a direct verdict for the defendants. It is the duty of this court to do justice and to give effect to the substantive law. Errors of procedure and oversights in the preparation of a case can not neutralize an error made in the administration of the substantive law. Rule 2 of this court further states:

"This court reserves the right to take notice of an error of law apparent on the face of the record."

The errors above mentioned are apparent upon the face of the record. They are clearly indicated in the bill of exceptions. Not only were they technically prejudicial to the plaintiff, but it seems manifest that had they not occurred a different verdict would have been reached. The merits of the plaintiff's case make an unusual appeal. His injuries were substantial, and the testimony concerning them was not contradicted. It is the sacrifice of justice in order that the minutiae of technical procedure may be exalted that is responsible for the criticism of the courts. This court, I believe, ought to avail itself of the exception to Rule 2 just quoted. Plenty of justification can be found for such a course. From 4 C. J., Appeal and Error, p. 1734, § 1239, I quote:

"Under an exception dispensing with the necessity of an assignment of error in the case of 'an error of law, apparent upon the face of the record' the appellate court may and must consider errors coming

within the terms of the exception without their being assigned.''

It will be recalled that every error mentioned above is within the terms of the exceptions previously quoted. It is unnecessary to quote further from the authority just cited, but a further reading of the paragraph will clearly show an abundance of justification for taking note of the errors dwelt upon in the preceding paragraphs of this dissenting opinion.

The judgment of the circuit court ought to be reversed and we ought to recede from our previous opinion. I dissent from the majority.

RAND, J., concurs in this dissent.