[Filed June 20, 1889.]

## STATE OF OREGON, RESPONDENT, v. CHEE GONG, APPELLANT.

MATTER WHICH CONSTITUTES NO PART OF THE RECORD PROPER cannot be considered on appeal, unless incorporated in a bill of exceptions.

UNTIL SUCH MATTER IS PUT INTO A BILL OF EXCEPTIONS, and is authenticated as required by law, the court cannot receive it, because there is no legal evidence before the court that it contains a correct record of the proceedings.

WHETHER A WITNESS MAY BE ASKED CONCERNING ANY SERIOUS CHARGE brought against him rests in the sound discretion of the court to allow or exclude such inquiry as the ends of justice may seem to require.

THE DISTINCTION BETWEEN A MAP OR PLAN not admitted in evidence, but used only to enable the witness to explain the different points, location, etc., as to which he testifies, and such a map admitted as evidence of the *locus in quo* noted.

THE ALLOWANCE OF LEADING QUESTIONS rests in the sound discretion of the trial court.

WHEN THE CHARGE IS THE KILLING WITH A KNIFE, and all the evidence, taken together, tends to identify the knife used in evidence as the one used by the prisoner, the question of the identity of the knife is exclusively for the jury.

*Williams & Wood,* for Appellant.

*Henry E. McGinn,* for Respondent.

LORD, J. — The defendant was indicted, tried, and convicted of murder, and sentenced to be hanged. To procure a reversal of that sentence and a new trial, several errors have been assigned and argued, with candor and much ability. Of these assignments of error the two most important, and upon which the most stress is laid, do not constitute a part or *any* part of the bill of exceptions, nor are they any part of the record proper. They consist simply of affidavits used presumably upon the motion for a new trial.

It has been often held, and expressly so by this court in *State* v. *Drake*, 11 Or. 396, that matter which consti-

tutes no part of the record proper cannot be considered on appeal unless incorporated in a bill of exceptions. The reason is, until such matter is put into a bill of exceptions, and the bill authenticated as required by law, the court cannot receive it, because there is no legal evidence before the court that it contains a correct record of the proceedings. It may not be amiss, however, to say that the first objection — the right of the accused to be present at the jury view ordered by the court — has twice been expressly decided adversely to the contention of the defendant by this court (*State* v. *Ah Lee*, 8 Or. 214, and *State* v. *Moran*, 15 Or. 276), and that it would hardly be a safe practice to overturn two solemn adjudications upon matters not properly before us, and about which there is an admitted diversity of judicial opinion. Besides, it is admitted that at the time the court made the order, the defendant and his counsel were informed of their right to be present, and that they stated in open court, for the defendant and themselves, that neither their client nor themselves wished to be present at the jury view of the place where the murder was committed, and added that they made this statement without any mental reservation whatever. Upon the assumption that it is the right of the accused to be present, how was an exception to be taken when the court distinctly informed the defendant and his counsel of that right, and he and they as distinctly refused to exercise it? Was it error because the court did not order its executive officer to bind the defendant hand and foot, and carry him forcibly to the place where the murder was committed and the jury view ordered?

But it is hardly necessary to pursue the subject further, as our only object in adverting to the matter is to show the extremely fragile ground upon which this objection is urged upon all the admitted facts and circumstances.

It is enough that the matter is not before us, to exclude its consideration, and this observation equally applies to the other proposition discussed.

It is also claimed that the court erred in not allowing the witness Ah How to answer, on cross-examination, the question: "Did you not kill a man in Chicago, and flee from there?" In *State* v. *Bacon,* 13 Or. 155, the principle involved in such an inquiry on cross-examination received a careful consideration in this court, and the result reached is adverse to the contention of counsel. As the court has no disposition to change or modify the view therein expressed, that case must control, and is decisive of the principle here involved.

The next error assigned is the admission in evidence of a certain map of the China theater, and in permitting the witnesses called by the state to refer to the map when testifying. The distinction between a map not admitted as evidence, but only to enable a witness to explain the position of different points, locations, etc., as to which he testifies, and a map admitted as evidence of the *locus in quo,* is noted and conceded. But according to our judgment upon the evidence as exhibited by the bill of exceptions, the map was authenticated. It was shown by those who were familiar with the interior of the theater, and recognized by them as correct in design. Indeed, there does not seem to have been any doubt as to this, only that it was not drawn upon a scale. This was not error.

The two next errors assigned involve the same question, viz., the indentity of the knife. The argument, in effect, is, that the evidence was too remote to connect the defendant with the knife. It may be that the testimony is susceptible of some criticism as to the order of its introduction,—a matter which is liable to occur where there are numerous witnesses,—but, when taken together and in connection with the facts, the identity of the knife is

sufficiently established.   It is alleged in the indictment that the killing of Lee Yick was caused by stabbing him in the head with a knife.   As the state was bound to prove this, a Dr. Panton, who had examined and described the wound, also stated the kind of instrument by which it was likely to have been produced, and further testified that he had seen "a knife which was said to have been used."   He was then asked whether he would recognize the knife now shown him as the one which he saw, which, being objected to, the court permitted him to answer to the extent of indentifying the knife.   He answered that "it was either this one or one exactly similar. This appears to be the knife, as far as I remember." Now, this alone was manifestly insufficient, but there is other evidence which must be considered to determine the point we are required to decide.

To summarize, the evidence in the bill of exceptions discloses that when the onslaught was made on Lee Yick in the theater, among his assailants was the defendant, who alone was armed with a knife, the others being armed with iron bars and a hatchet; that, at the place where the killing occurred, a knife was found with the point covered with blood about two inches up the blade, which was taken by one of the police to the station, and that the knife was the property of the defendant.   At the former trial of the defendant, that knife was identified by the officer Hoxie, who identified it at the present trial of the defendant.   He says: "I identified the knife at that time, and I believe this is the same knife.   I think it is the same knife."   Nor is this all.   The evidence of Lee Toy shows that the defendant had worked for him, that he had seen the knife in the room of the defendant before the killing had occurred, and that it was the property of the defendant; that the next time he had seen the knife was in the court-room on the former trial.   Now, when, in

the present trial, the knife was handed to him, and he was asked to look at it, and state if he could identify it as the knife he saw in the possession of the defendant, his answer was: "That is the same knife." Whereas, in this case, the charge is the killing with a knife, and all the evidence taken together tends to identify the knife in evidence as the one used by the prisoner; the question of the identity of such knife is exclusively for the jury.

The next objection is, that the court permitted a question to be asked which suggested the answer, viz., "State whether or not Chee Gong was armed that night." It is asserted by some authorities that the allowing of leading questions is a matter wholly within the discretion of the court, while others hold if such discretion has been abused it is a ground of error. Mr. Greenleaf says: "When and under what circumstances a leading question may be put is a matter resting in the sound discretion of the court, and not a matter which can be assigned as error." (1 Greenl. Ev., sec. 435.) Assuming that the question is leading, when it is remembered how difficult it is to take Chinese testimony, and that the matter, at any rate, rests in the sound discretion of the court, we are unable to say that there was any error. The answer was, "I saw him have a knife," and this is the concurrent testimony of all the witnesses. The result is, that we are unable to find any error upon the record before us, and in such case our duty is to affirm the judgment, and it is so ordered.