Argued October 21; affirmed November 30, 1948

# NICHOLAS *v.* FENNELL

199 P. (2d) 905

*Laurence L. Morley,* of Lebanon, and *Orval N. Thompson,* of Albany, argued the cause for appellant. On the brief were Morley & Thomas, of Lebanon, and Weatherford & Thompson, of Albany.

*W. W. Wyse* and *Hugh L. Biggs,* of Portland, argued the cause for respondent. With Hugh L. Biggs on the brief were Hart, Spencer, McCulloch & Rockwood, of Portland.

Before ROSSMAN, Chief Justice, and LUSK, KELLY and HAY, Justices.

ROSSMAN, C. J.

This is an appeal by the plaintiff from a judgment of the circuit court, based upon a verdict, in favor of the defendant. The action which terminated in the entry of the challenged judgment arose out of an automobile collision which occurred at 2:30 a. m., February 23, 1947, on the Santiam highway a few miles east of

Albany. The complaint averred negligence upon the defendant's part. The answer charged the plaintiff with contributory negligence.

The general direction of the Santiam highway near the scene of the collision is north and south. A yellow stripe marks the center of the pavement. Before the misadventure the plaintiff was proceeding southward. A short distance ahead of his car was one which the defendant was driving. It also was southbound. Coming from the opposite direction was a car operated by one John Elliott. The plaintiff's and the defendant's cars did not collide with each other, but the defendant's and the Elliott car came into contact and thereupon the Elliott car careened across the pavement and was struck by the plaintiff's. In that way the plaintiff suffered injuries and his car was damaged. The plaintiff claims that the defendant negligently drove his car to the left side of the yellow line and sideswiped the Elliott car, thereby causing it to be thrown directly into his path.

Although the circumstances do not require us to inquire into the averment that the defendant was negligent, nevertheless, in view of the plaintiff's contention that no finding was warranted that he was guilty of contributory negligence, we deem it pertinent to mention the charges of negligence which the complaint made against the defendant; they are: (a) the defendant drove his car three feet to the left of the center line of the highway and thereby struck the Elliott car, with the result that it swerved across the highway directly into the course of the plaintiff; (b) the defendant failed to yield the right of way to the Elliott car; and (c) the defendant failed to maintain a lookout. The answer denied those averments. It charged that the

Elliott car was operated on the wrong side of the roadway, that its driver did not maintain a lookout, that he did not have his car under control and that he was traveling at an excessive rate of speed. The answer made the following charges of negligence against the plaintiff: (a) excessive speed; (b) failure to maintain a lookout; and (c) failure to have his car under control.

The appellant presents five assignments of error. The first four are based upon the denial by the trial judge of the following motions which were made by the plaintiff at the conclusion of the evidence: (1) to withdraw from the jury the charge that the plaintiff drove his automobile at an excessive speed; (2) to withdraw from the jury the charge that the plaintiff failed to maintain a proper lookout; (3) to withdraw the averment that the plaintiff did not have his car under proper control; and (4) to withdraw "the issue that the foregoing acts of negligence on the part of said John Elliott and the plaintiff proximately contributed to and caused the collision between the Elliott car and the plaintiff's car." The fifth assignment of error follows:

> "The Court erred in giving instructions upon contributory negligence on the part of plaintiff and each and every instruction upon said contributory negligence numbered 32 to 45, inclusive, for the same reason as set forth in plaintiff's request to withdraw the question of contributory negligence from the jury upon the ground there was no evidence to support contributory negligence * * * ."

The appellant's brief summarizes the assignments of error as follows:

> "There is no evidence in the record of any contributory negligence on the part of the plaintiff and, therefore, each of the motions to withdraw from the

jury the various issues upon contributory negligence, namely, failure of lookout, failure to have the car under control, speed, and the contributory negligence of the third car's driver, Elliott, and the plaintiff should have been granted.''

We now turn to the evidence. The facts which are material to the assignments of error are virtually free from dispute. The only serious disagreement in the evidence is whether or not the defendant was upon the wrong side of the yellow line when his car collided with Elliott's car. But, since we are required under the circumstances to assume his negligence, we shall not mention the evidence upon that score. Upon all other issues the evidence is strikingly free from dispute and the main issue is whether or not different inferences can be drawn from it.

The pavement of the Santiam highway at the scene of the misadventure is 22 feet wide. On each side of it are graveled berms or shoulders. The general direction of the road at the place in question is north and south for a long distance, apart from a minor curve which was not a factor in the case.

Although three cars were involved in the two accidents, the source of the evidence concerning the collisions was limited. The driver and one of the occupants of the Elliott car were killed. Another of the occupants was rendered unconscious for many days and, as a witness, had no recollection of what took place. The fourth occupant was unavailable. The plaintiff and the defendant were alone in their respective cars. The plaintiff was unconscious for several hours following the impact and, seemingly, was unable to recall some of the incidents. The defendant's injury was slight.

The plaintiff described the night of February 23 as

"totally dark, pitch dark." The pavement was dry. A police officer who shortly came to the scene of the wrecks said that "quite a bit" of traffic was moving along the highway. An intersecting county road crosses the highway about a hundred feet beyond the place where the cars came together.

About four miles before the cars reached the place of the mishaps the defendant's car overtook and passed the plaintiff's and thereafter the plaintiff followed the defendant. The plaintiff thought his speed was "somewhere in the vicinity from 45 to 50, somewhere in there." The defendant estimated his in similar terms. Exactly how far the plaintiff was behind the defendant as the latter approached the Elliott car cannot be determined from anything before us. The plaintiff's testimony gives us our best impression upon that important phase of the case. Before quoting from it we explain that when the plaintiff refers to the "Fennell" car he means the defendant's. We now quote:

"Q. After the Fennell car passed you, what is the fact about your keeping in touch with it or what could you see of it?

"A. I am conscious of following the taillights on this car.

"Q. Do you remember whether they were always in sight of your observation or not?

"A. As I recall, I believe they were. I kept at what I presumed would be a safe distance at all times, and we were traveling at about the same speed.

"Q. Have you any idea how far in the rear of him you were?

"A. No, that would be hard to say, as dark as it was, but I was certain that I was at a safe distance.

"Q. Well, you could see his red lights though —his rear lights?

"A. Yes, I could see them in the distance.

"Q. Well, could you estimate the distance in hundreds of feet or yards, or anything of that kind?

"A. Well, it would be difficult to set any special distance; however, it is possible it could very easily have been two or three hundred feet, possibly more.

"Q. I see. Now, would that be your best judgment about the distance you were from him?

"A. I believe I was—that is about as close as I can recall."

While the two cars were proceeding in the manner just described, the headlights of the Elliott car appeared in the distance. The plaintiff, as a witness, conceded that he saw them. His words were, "I recall seeing the headlights of the approaching car in the distance, quite some distance before the two cars met." His next mention of the Elliott car concerned it as it loomed up directly in front of him after it and the defendant's car had sideswiped each other. Before we quote that part of his testimony, we think it pertinent to state that the plaintiff did not notice the collision of the two cars nor hear the sound made by it. Evidently after he first saw the Elliott car he lost track of it, and did not observe it again until it was directly in front of him. The importance of his failure to have seen and heard the collision is realized when one takes notice of the magnitude of the collision. There are photographs before us which show the left side of the defendant's and of the Elliott car. They were taken after the collision and reveal its effect. Since the defendant's car was not struck by the plaintiff's, and since the latter did not touch the left side of the Elliott

car, all of the damage to the defendant's car and all of that to the left side of the Elliott car must have been inflicted when the two sideswiped. The damage was extensive. Both cars, especially the Elliott one, were badly mutilated. We shall mention some details. The left front wheel of the defendant's car was torn off. The left rear wheel of the Elliott one was badly twisted at the axle. The left fenders, running boards and body parts of the two cars were torn, stripped and crumpled. The force of the impact caused the left door of the Elliott car to be dismembered. The defendant testified that when his and the Elliott car collided his was tilted from the pavement and he feared it would overturn. It righted itself, however, and, according to the defendant, "I seemed to come down with a bang." We mention these facts for the purpose of showing that directly in front of the plaintiff upon the open road, which should have been an object of his watchfulness, there occurred a collision of magnitude. The scraping, crushing and tearing apart of the sheet metal parts of the two cars, together with the bending or breaking of axles, must have made a loud, penetrating report. The plaintiff neither saw nor heard the collision.

Our statement that the plaintiff neither saw nor heard the collision of the defendant's and the Elliott car is warranted by his testimony which we shall presently quote. In the quotation which we shall employ, the plaintiff's use of the word "headlights" refers to those upon the Elliott car. The following is what he said:

> "I followed the headlights to about that point, but I can't recall what took place there until this car (Elliott's) was coming in front of me, out of control, within my own range of lights."

Shortly he was asked, and answered, as follows:

"Q. The point is you did not see the accident. You were aware of headlights of the other car approaching from a distance down the road, and you were aware of the rear lights of Mr. Fennell's car ahead of you?

"A. That's right.

\* \* \*

"Q. You did not hear the collision of the automobiles, I believe you stated?

"A. I don't recall it. But it is possible I may have had my radio on at the time.

"Q. And didn't hear it. When you were first aware of it, the Elliott car, the car you now know to be the Elliott car, was coming broadside at you, is that what I understand you to say?

"A. It was obviously out of control and it seems to me, as I recall it, it made some sort of variation of its path."

He further testified:

"The first sense of impending danger I had was when this car came into the vision of my own headlights, which I might say I had been driving with them down, meeting traffic, what little traffic I had, and the car was obviously out of control and coming at a fairly sharp angle across the highway in front of me."

He was unable to estimate in feet the distance from him of the Elliott car when he saw it moving across the pavement, but said: "It wasn't very far."

In the following answer, the plaintiff mentioned the action he took to avoid collision with the Elliott car:

"The only thing I did, my first impulse was to hit my brakes, which I did, and that is the last I remember."

Judging from the photographs, the entire front of the plaintiff's car hit the Elliott car immediately to the rear of its single right door. The right rear fender of the Elliott car was badly crushed and its right rear tire was deflated. Its frame appears to have been badly sprung. Prior to the collision with the plaintiff's car the Elliott car was moving westerly. After it came to rest it was headed northeast. Both of its rear wheels were upon the extremities of the west shoulder. When the plaintiff's car came to rest it was facing southeasterly upon the left-hand side of the road.

It will be observed that the plaintiff swore that he applied his brakes when he saw the Elliott car crossing the roadway in his path. Police officers carefully examined the pavement after the accident and took note of all marks and wreckage debris which they encountered. So far as we can ascertain from their testimony, they found no heavy black marks of the kind made by tires which skid after the application of brakes. We mention this, not for the purpose of detracting from the plaintiff's testimony that he applied his brakes when he observed the Elliott car, but only to indicate that the application of his brakes was possibly only momentary. If such was the situation, then the plaintiff evidently did not see the Elliott car for more than an instant or two before he crashed into it.

The above, we believe, is a review of all of the facts material to the assignments of error. The problem presents itself as to whether or not the facts are compatible only with a conclusion that the plaintiff exercised due care or whether, with greater reason, they warrant a conclusion that the plaintiff was guilty of contributory negligence.

■■ It, of course, goes without saying that since the

defendant placed the charge of contributory negligence against the plaintiff, he has the burden of proof. Since the evidence is free from contradiction, the burden in this case means that the defendant must show that the aforementioned facts, free from contradiction as they are, are more consonant with a finding of contributory negligence than with one of due care.

■ The duties of a motorist to drive at a reasonable rate of speed, to maintain an adequate lookout and to keep his car under control are interrelated and mutually dependent. Unless a change takes place in the other attendant circumstances, a variation of the rate of speed, normally, has a concurrent effect upon the duties of control and lookout. Likewise, a relaxation in control or lookout should be accompanied by a reduction in the rate of speed. The greater the speed, the less is the control; the less control, the more is the necessity for a sharp lookout.

■ A driver who is confronted with an emergency not of his own making, and who is required to act instantly or instinctively is not expected to display the same judgment and selection between alternative courses of escape as is expected when time is available for deliberation; *Frangos v. Edmunds,* 179 Or. 577, 173 P. 2d 596; and *Goebel v. Vaught,* 126 Or. 332, 269 P. 491. Nevertheless, even though a motorist acts in an emergency, he does not find himself in a legal vacuum free from legal rules and standards. The law's omnipresent standard of a reasonably prudent person governs his action. If, in the emergency, he does what a reasonably prudent person presumably would have done, he is not liable for the consequences even though circumspection, had time for it been available, would have avoided a mishap: *Frangos v. Edmunds,* supra, and

*Kiddle v. Schnitzer,* 167 Or. 316, 144 P. 2d 109, 117 P. 2d 983. Generally, whether action taken in an emergency conformed with the demands of due care is an issue for the jury: *Kiddle v. Schnitzer,* supra, and *Goebel v. Vaught,* supra. A motorist can not shield himself from liability by pleading emergency action if the emergency was brought about by his own negligent course of conduct: *McVay v. Byars,* 171 Or. 449, 138 P. 2d 210; *Kiddle v. Schnitzer,* supra; *Murphy v. Read,* 157 Or. 487, 72 P. 2d 935; *Dickson v. King,* 151 Or. 512, 49 P. 2d 367; and *Snabel v. Barber,* 137 Or. 88, 300 P. 331.

It may be that when the plaintiff saw the disabled Elliott car moving into his path, he was required to act without having time for reflection. Likewise, it may be that after his eyes picked up the lurching Elliott car he did all that a reasonably prudent person could have done to avoid striking it. It seems apparent that if the jury thought that there was nothing more to the situation than the facts just mentioned, it would have returned a verdict for the plaintiff. Evidently, the jury went on and considered the issue as to whether or not the plaintiff was responsible for the predicament in which he found himself. Let us now see whether they were justified in finding that he brought the emergency upon himself, if, in fact, they so found.

As a motorist drives along the highway he should give reasonable attention to other cars upon the pavement which are approaching him from the opposite direction. A car in the distance may become a source of danger as it draws near. Common experience teaches that danger lurks in virtually every car which one encounters. None should be totally ignored. The potential danger reaches its apex when the approaching car draws near at hand.

The plaintiff, after observing the Elliott car when it was in the distance, permitted it to escape from his sight. There were no intervening objects or cars which concealed it. The record contains no explanation for the conduct of the plaintiff in permitting the Elliott car to pass from his vision, unless it be found in his surmise that he may have been paying attention to his radio. The fact that the plaintiff lost track of the Elliott car after seeing it in the distance, and the further fact that he failed to see or hear the collision, are circumstances which, in our opinion, were appropriate for the jury's consideration in determining whether the plaintiff was maintaining a reasonably adequate lookout. Those circumstances may have satisfied the jury that the plaintiff was absorbed with his radio or with something else at the time when he should have been paying heed to the approaching Elliott car.

As a witness, the plaintiff expressed the belief that he was following the defendant's car at a distance of "two or three hundred feet, possibly more." If his estimate was accurate, the collision between the Elliott car and the defendant's occurred two or three hundred feet, possibly more, directly ahead of him. The extensive sideswiping of the cars must have slowed down materially the Elliott car. Moreover, it changed the course of that car from straight ahead to an abrupt turn to the left. It appears to us that the jury was justified in finding—if, in fact, it did so find,—that a reasonably adequate lookout upon the plaintiff's part would have enabled him to have seen the Elliott car in time to have avoided colliding with it. An omission upon his part to maintain such a lookout constituted negligence.

The plaintiff depends largely upon *Cameron v.*

*Goree,* (Or.), 189 P. 2d 596. The difference between the facts of that case and those now before us consists in this: in the Cameron case the motorist upon the through highway was maintaining an adequate lookout, while in this case a finding was warranted that the plaintiff had relaxed his lookout.

■ If the plaintiff's lookout was relaxed—and a finding to that effect, in our opinion, was warranted—an inference was also warranted that his speed should have been reduced or that in some other manner he should have brought his car under greater control. In short, we do not believe that the circuit court erred when it denied the motions upon which the first four assignments of error are predicated. We also believe that no error was committed when the issue of contributory negligence was submitted to the jury. All five assignments of error, we believe, are lacking in merit.

The judgment of the circuit court is affirmed.